IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-356-D

| | | |
|---|---|---|
| SAMANTHA ELABANJO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| EXCEL PROPERTY MANAGEMENT, INC., | ) | |
| et al., | ) | |
| Defendants. | ) | |

On October 4, 2018, Samantha Elabanjo ("Elabanjo"), proceeding pro se and in forma pauperis, filed a complaint against Excel Property Management, Inc. ("Excel"), Calvary Trace Apartments ("Calvary Trace"), Blake Brazier ("Brazier"), Chris Hanson, Kimberly M. Lilly Dupree ("Dupree"), Linda Poole ("Poole"), and Ann Hanson (collectively "defendants") [D.E. 8]. On December 5, 2018, defendants moved to dismiss the complaint for failure to state a claim [D.E. 29] and filed a memorandum in support [D.E. 30]. On December 6, 2018, the court notified Elabanjo about the motion, the response deadline, and the consequences of failing to do so [D.E. 31]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). On January 2, 2019, Elabanjo responded in opposition [D.E. 32] and voluntarily dismissed her retaliatory eviction claim [D.E. 33]. On January 15, 2019, defendants replied [D.E. 34]. As explained below, the court grants defendants' motion to dismiss.

I.

On November 13, 2015, Elabanjo leased an apartment at Calvary Trace in Raleigh, North Carolina. See Compl. [D.E. 8] ¶ 1; [D.E. 8-3] 1. Elabanjo alleges that, because she suffers from

depression, post-traumatic stress disorder ("PTSD"), bipolar disorder, and paranoia, she received assistance in paying for the apartment through the North Carolina Housing Finance Agency's Key Program. See Compl. [D.E. 8] ¶ 1. On October 31, 2016, Elabanjo's lease ended, and Elabanjo leased the apartment month-to-month. See id.; [D.E. 8-3] 1.

In June 2016, Elabanjo, whose apartment was on the second floor, began having difficulties with her upstairs neighbor. See Compl. [D.E. 8] ¶¶ 1–3. In particular, Elabanjo disliked her upstairs neighbor's children bouncing a ball in the apartment, which Elabanjo said "ma[de] excessive noise." Id. ¶ 1. Elabanjo complained to Brazier, who told Elabanjo to contact Calvary Trace's security contractor On Point Security or the Raleigh Police Department. See id. ¶ 2. On June 29, 2016, and June 30, 2016, Elabanjo contacted On Point Security. See id. ¶¶ 1, 3. Elabanjo alleges that security officers visited her apartment, told her that they had audio and video of the incident and had prepared an incident report, and warned her neighbor about the noise. See id. Elabanjo continued to have problems with her upstairs neighbor. See id. ¶ 4. Elabanjo contacted Brazier concerning the incident report in July and August 2016, but Brazier told Elabanjo that she would not issue a violation to Elabanjo's neighbor. See id. ¶¶ 4–5; cf. [D.E. 8-9].

Elabanjo told Brazier that Brazier's refusal to issue a violation constituted discrimination. See Compl. [D.E. 8] ¶ 5. Elabanjo complained in person at Excel to Poole and Ann Hanson about her neighbor's noise and Brazier's response to the situation. See id. ¶¶ 5–6. Elabanjo alleges that Ann Hanson and Poole said that "they would take care of both situations." Id. ¶ 6. After the meeting, Elabanjo alleges that Brazier confronted her in the Calvary Trace office and said that she treats everyone fairly. See id. ¶ 7. Excel offered to move Elabanjo to an apartment on the third floor, but Elabanjo declined because physical disabilities prevented her from walking to the third floor. Id.; see id. ¶ 8. In October 2016, Elabanjo's neighbor moved to a new unit in Calvary Trace,

2

and the neighbor's aunts and boyfriend allegedly threatened Elabanjo. See id. ¶ 8.

On October 14, 2016, Elabanjo alleges that, while sitting at a smoking booth, another Calvary Trace resident asked Elabanjo if she had heard about the "new loitering policy." Id. ¶ 9. Elabanjo went to the office to discuss the new policy with Brazier. See id. Elabanjo alleges that Brazier told Elabanjo that "it was a lease violation to be outside without an apparent purpose because it looks 'suspicious'" and that residents "needed a reason to be out in the parking lot." Id. ¶ 10. Elabanjo also alleges that Brazier told her it was "illegal" to walk around and get fresh air. See id.; [D.E. 8-2]. Elabanjo taped the conversation. See Compl. [D.E. 8] ¶ 9; [D.E. 8-2].

After this conversation, Elabanjo became too paranoid to leave her apartment. See id. ¶ 11. Elabanjo feared having to explain to security officers why she was outside, and she became distressed when she saw other residents walking outside. See id. Elabanjo alleges that she became depressed, angry, humiliated, and suffered from PTSD. See id. Elabanjo and her sister met with Poole, and Poole assured Elabanjo that she had misunderstood Brazier's explanation of the loitering policy. See id. ¶ 12. Elabanjo nevertheless "continued not to come outside" and took steps to minimize the time that she spent outside. Id. ¶ 13.

On February 27, 2017, Excel notified Elabanjo that it would not renew her lease for the next month and that Elabanjo needed to vacate the apartment by March 31, 2017. See id. ¶ 14; [D.E. 8-10]. Elabanjo went to Excel and met with Dupree, who told Elabanjo that she did not know why Excel would not renew Elabanjo's lease. See Compl. [D.E. 8] ¶ 15. Elabanjo requested information concerning a reasonable accommodation letter from Dupree. See id. ¶ 16. Elabanjo then alleges that she met with Susan Chifton ("Chifton"), a clinical operations physician at "Monarch[,]" where Elabanjo received mental health treatment. Id. Chifton requested a reasonable accommodation on Elabanjo's behalf, and Elabanjo submitted the request to Dupree. See id. On March 9, 2017, Excel

3

denied Elabanjo's request, citing Elabanjo's "intimidating behavior." Id. ¶ 17; see id. ¶ 18; [D.E. 8-4]; [D.E. 8-7]. Elabanjo attempted to appeal the decision, and on March 14, 2017, Elabanjo received a letter denying her request. See Compl. [D.E. 8] ¶ 19; [D.E. 8-8].

Elabanjo did not vacate her apartment, and Excel began the eviction process. See Compl. [D.E. 8] ¶ 19; [D.E. 8-5]. Elabanjo appeared before a magistrate in "small claims court," and the magistrate ruled that Excel did not have good cause to evict Elabanjo. See id. ¶¶ 20–21. Excel appealed. In October 2017, Elabanjo prevailed in a non-jury trial in Wake County Civil District Court, and the court issued an order of final judgment and made findings of fact and conclusions of law. See id. ¶¶ 25–30; [D.E. 8-11].

Elabanjo continued to reside at Calvary Trace for approximately eight months. On June 4 2018, Elabanjo notified Excel that she was voluntarily vacating her apartment. See Compl. [D.E. 8] ¶¶ 31–32; [D.E. 8-6]. Elabanjo alleges that she decided to vacate because Brazier still worked at Calvary Trace, which allegedly caused Elabanjo emotional distress. See Compl. [D.E. 8] ¶¶ 31–32. On July 5, 2018, Elabanjo vacated her apartment. See [D.E. 8-6].

On July 18, 2018, Elabanjo filed a complaint pro se in this court and sought leave to proceed in forma pauperis [D.E. 1]. On October 4, 2018, the court allowed Elabanjo's complaint to proceed in part [D.E. 7]. Five claims survived frivolity review: (1) discrimination in violation of the Fair Housing Act of 1968, (2) breach of contract against Calvary Trace, (3) breach of the covenant of quiet enjoyment against Calvary Trace, (4) gross negligence, and (5) retaliatory eviction against Calvary Trace [D.E. 7].[1] Elabanjo seeks $10 million, punitive damages, and injunctive relief including prohibiting Calvary Trace from receiving tax credits for four years, "requiring a mandatory

---

[1] On January 2, 2019, Elabanjo voluntarily dismissed her retaliatory eviction claim [D.E. 33].

4

training class on fair housing laws, and requiring that Calvary Trace change the phrasing in all of its future leases." [D.E. 30] 4; see Compl. [D.E. 8] 20.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's allegations must "nudge[ ] [her] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

The standard used to evaluate the sufficiency of a pleading is flexible, "and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not "undermine [the] requirement that a pleading contain 'more than labels and conclusions.'" Giarratano, 521 F.3d at 304 n.5 (quoting Twombly, 550 U.S. at 555); see Iqbal,

5

556 U.S. at 677–83; Coleman, 626 F.3d at 190; Nemet Chevrolet, Ltd., 591 F.3d at 255–56; Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court also may take judicial notice of public records without converting the motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

The motion to dismiss requires the court to consider Elabanjo's state-law claims, and the parties agree that North Carolina law applies. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted).[2] In predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999). Moreover, in predicting how the highest court of a

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

state would address an issue that it has not yet resolved, this court must "follow the decision of an intermediate state appellate court unless there [are] persuasive data that the highest court would decide differently." Toloczko, 728 F.3d at 398 (quotation omitted).

III.

Defendants argue that res judicata bars Elabanjo's claims. See [D.E. 30] 8–12. Defendants contend that Elabanjo's claims in this case are based on the "exact same issues" that the court considered in the eviction proceeding. Id. at 11 (emphasis omitted). Defendants note that Elabanjo also brought many of the same claims as counterclaims in the eviction proceeding, and that Elabanjo voluntarily dismissed her counterclaims on August 4, 2017. See id.; [D.E. 8-11] ¶ 20; [D.E. 30-1] 10–12.

Under the doctrine of res judicata, also known as claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981); Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004) (quotation omitted); see Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161–62 (4th Cir. 2008); Parks v. Petsmart, No. 5:13-CV-777-D, 2014 WL 11996387, at *2 (E.D.N.C. Feb. 12, 2014) (unpublished), aff'd, 577 F. App'x 210 (4th Cir. 2014) (per curiam) (unpublished). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); see Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293 (2005); Laurel Sand & Gravel, Inc., 519 F.3d at 162 ("[T]he preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."); Njau v. Harford Cty., No. ELH-15-49, 2015 WL 7352215,

7

at *8 (D. Md. Nov. 19, 2015) (unpublished).

Under North Carolina law, the doctrine of res judicata bars parties from relitigating issues that the parties raised or could have raised in a prior action:

> Where a second action or proceeding is between the same parties as the first action or proceeding, the judgment in the former action or proceeding is conclusive in the latter not only as to all matters actually litigated and determined, but also as to all matters which could properly have been litigated and determined in the former action or proceeding.

King v. Neese, 233 N.C. 132, 136, 63 S.E.2d 123, 126 (1951); see Fickley v. Greystone Enters., Inc., 140 N.C. App. 258, 260, 536 S.E.2d 331, 333 (2000); Young v. Young, 21 N.C. App. 424, 425, 204 S.E.2d 711, 712 (1974) (collecting cases). "The essential elements of res judicata are (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in the prior suit and the present suit, and (3) an identity of parties or their privies in both suits." Pate v. N.C. Dep't of Transp., 176 N.C. App. 530, 534–35, 626 S.E.2d 661, 665 (2006) (quotation omitted).

"[A] counterclaim is compulsory if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fickley, 140 N.C. App. at 260, 536 S.E.2d at 333; see N.C. R. Civ. P. 13(a); Jonesboro United Methodist Church v. Mullins-Sherman Architects, LLP, 359 N.C. 593, 596–97, 614 S.E.2d 268, 270–71 (2005). "[A] party who does not plead a compulsory counterclaim is, after determination of the action in which it should have been pleaded, forever barred from bringing a later independent action on that claim." Jonesboro United Methodist Church, 359 N.C. at 596–97, 614 S.E.2d at 270. To determine whether a claim arises out of "the same transaction or occurrence as a prior claim," the court must consider "(1) whether the issues of fact and law are largely the same; (2) whether substantially the same evidence is involved in each action; and (3) whether there is a logical relationship between the two actions." Fickley, 140

8

N.C. App. at 260–61, 536 S.E.2d at 333 (quotation omitted).

Calvary Trace filed an eviction action against Elabanjo in North Carolina state court. The parties litigated the case to a final judgment on the merits. See [D.E. 8-11] 4. The eviction action and this action involve the same parties or their privies. Accordingly, if Elabanjo's counterclaims were compulsory, the court must give preclusive effect to the North Carolina court's decision, and Elabanjo is barred from raising such claims in this court.

First, as for the issues of fact and law, this case relies on the same factual background as the eviction case, and the two involve similar issues of law. Compare [D.E. 8-11] ¶¶ 1–40, with Compl. [D.E. 8] ¶¶ 1–32; cf. Fickley, 140 N.C. App. at 261–62, 536 S.E.2d at 333–34. Even Elabanjo's breach of contract and breach of covenant of quiet enjoyment claims are premised on the same facts underlying the eviction (i.e., Elabanjo's belief that she could not go outside without violating Calvary Trace's loitering policy and Elabanjo's response to the policy). Second, the two cases also involve substantially the same evidence. The state district court considered evidence concerning Elabanjo's "pattern of harassing and intimidating behavior" in the eviction proceeding. [D.E. 8-11] ¶ 19 (quotation omitted). The evidence included Elabanjo's noise complaints, Elabanjo's response to the loitering policy (i.e., filming a meeting with Brazier), confrontations between Elabanjo and other residents, and Excel's attempt to terminate Elabanjo's month-to-month tenancy. See id. ¶¶ 21–27, 33–40. Finally, there is a logical relationship between Calvary Trace's eviction action and Elabanjo's claims in this action. Cf. Fickley, 140 N.C. App. at 261, 536 S.E.2d at 333–34. Accordingly, Elabanjo's counterclaims were compulsory, and Elabanjo had to bring them, if at all, during the eviction proceeding. Because the counterclaims were compulsory, Elabanjo's voluntary dismissal of her counterclaims in the eviction proceeding does not change this conclusion. Thus, res judicata bars Elabanjo from relitigating the claims asserted in this action. In light of this

conclusion, the court declines to reach the merits of Elabanjo's claims and grants defendants' motion to dismiss.

IV.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 29] and DISMISSES the complaint with prejudice. The clerk shall close the case.

SO ORDERED. This _2_ day of May 2019.

                                                        JAMES C. DEVER III
                                                        United States District Judge